IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-CR-70 |
| | ) | |
| MARIA IGNACIA RAVELO-RODRIGUEZ, | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Defendant's Motion to Dismiss the Indictment and Memorandum in Support [Doc. 42], filed on October 3, 2011. The parties appeared before the undersigned for a motion hearing on January 11, 2012. Assistant United States Attorney Zachary C. Bolitho appeared on behalf of the Government. Attorney Randall E. Reagan represented the Defendant, who was also present. After reviewing the motion, response, and exhibits, and hearing the arguments of the parties, the Court took the motion under advisement.

## I. POSITIONS OF THE PARTIES

The Defendant is charged in a single-count Indictment [Doc. 3] with being found present in the United States on or about May 17, 2011, having been deported previously after incurring a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). The Defendant argues that the Indictment against her should be dismissed because the underlying deportation order was based upon constitutionally deficient deportation proceedings. Specifically,

the Defendant argues that her right to effective assistance of counsel was violated during her deportation proceedings, that the Board of Immigration Appeals (the "BIA") improperly retroactively applied the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to her case, and that her rights to conflict-free and effective assistance of counsel were violated during the felony drug case that provided the basis for her prior deportation.

The Government responds [Doc. 46] that the Defendant has not satisfied the statutory requirements, set forth in 8 U.S.C. § 1326(d), for collaterally attacking the validity of her prior deportation order because she has not shown that she was denied an opportunity for judicial review or that her immigration proceedings were fundamentally unfair. The Government also contends that the Defendant cannot attack her prior felony drug trafficking conviction in the context of this proceeding because such a collateral attack is beyond the permissible scope of a collateral attack in the § 1326 setting.

At the January 11 hearing on this motion, the Defendant requested that the Court first determine whether she will be allowed to collaterally attack her underlying deportation order and felony conviction. If the Court determines that such collateral attacks are permissible in this case, the Defendant requests that the Court hold an additional hearing for the parties to present further evidentiary proof on the collateral attacks.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Because the Court heard no evidence at the motion hearing in this case, this brief procedural and factual background is compiled from the proffers of the parties and the documents

attached as exhibits to the Government's response [Doc. 46, Exhibits 1-9].[1] The Defendant, a Mexican citizen, became a lawful permanent resident of the United States on August 10, 1989 [Exhibit 1 to Doc. 46]. In 1993, the Defendant was indicted on two counts in the Eastern District of Tennessee for conspiracy to distribute and possess with intent to distribute cocaine and possession with intent to distribute cocaine [Exhibit 2 to Doc. 46]. The Defendant pled guilty to one count of the Indictment against her, the Government dismissed the other count, and the Honorable James H. Jarvis sentenced the Defendant to forty-six months' imprisonment and four years of supervised release on May 2, 1995 [Exhibit 3 to Doc. 46]. The Defendant did not appeal her conviction or sentence and did not file a petition under 28 U.S.C. § 2255.

Because of the Defendant's felony drug conviction, the Immigration and Naturalization Service ("INS"), the functions of which now primarily fall under the Department of Homeland Security, initiated deportation proceedings against the Defendant, and the Defendant retained an immigration attorney for assistance in the immigration proceedings [Exhibit 4 to Doc. 46]. At the Defendant's hearing before Immigration Judge ("IJ") Tue Phan-Ghang on October 17, 1995, the Defendant admitted that she was subject to deportation based upon her felony conviction but requested the discretionary relief available at the time under then Immigration Nationality Act ("INA") § 212(c), seeking a waiver excludability of her conviction and relief from removal [Id.]. Despite INS counsel's objection that the Defendant was ineligible because she had not yet been a

---

[1] Without proof, the Defendant's motion proffers more extensive factual background related to the Defendant's personal life. Because the Defendant has asked that the Court first determine whether she will be allowed to collaterally attack her prior deportation order and earlier conviction before holding an evidentiary hearing for those challenges, the Court has not yet heard evidence of the facts laid out in the Defendant's motion and does not discuss them herein, except where specifically relevant.

3

lawful resident for seven years, the IJ allowed the Defendant additional time to file a § 212(c) application [Id.].

On July 18, 1996, a hearing on the § 212(c) application was held before IJ Brian H. Simpson [Exhibit 5 to Doc. 46]. During that hearing, the Defendant's attorney argued that she should be granted § 212(c) relief, despite having become a lawful permanent resident on August 10, 1989, slightly less than seven years prior to the hearing [Id.]. The IJ found the Defendant statutorily ineligible for § 212(c) relief due to her inability to show seven years of lawful domicile after acquiring lawful permanent residence status [Exhibit 6 to Doc. 46].

The Defendant appealed the IJ's ruling to the BIA, and the BIA dismissed the Defendant's appeal on March 11, 1997, holding that she was ineligible for relief under § 212(c) due to AEDPA, which had gone into effect on April 24, 1996 [Exhibit 7 to Doc. 46]. The BIA's decision cited In re Soriano, 21 I. & N. Dec. 516, 519-20 (BIA 1996), and explained that AEDPA eliminated the availability of § 212(c) relief for aliens convicted of aggravated felonies [Id.].

According to the document entitled Instructions for Release of Immigration Detainee with Supervision to Follow, the Bureau of Prisons released the Defendant into INS custody on August 10, 1998, [Exhibit 8 to Doc. 46], and the Defendant was deported to Mexico shortly afterward, [Exhibit 9 to Doc. 46]. At some point after her deportation, the Defendant reentered the United States without authorization, and she was arrested by United States Immigration and Customs Enforcement ("ICE") agents in Knoxville, Tennessee, on May 17, 2011. A federal grand jury returned an Indictment [Doc. 3] against the Defendant on May 24, 2011.

# III.  ANALYSIS

The Constitution requires that "[n]o person shall be . . . deprived of life, liberty, or property without the due process of law[.]"  U.S. Const. amend. V.  Our Supreme Court has held that the Due Process clause of the Fifth Amendment applies to lawful resident aliens and illegal aliens as well as to citizens.  Matthews v. Diaz, 426 U.S. 67, 77 (1976) (recognizing that "[e]ven one whose presence in this country is unlawful, involuntary, or transitory is entitled to" due process protections); Camara v. Gonzales, 166 F. App'x 840, 843 (6th Cir. 2006) (holding that "[t]he Due Process Clause of the Fifth Amendment protects aliens physically present in the United States as well as citizens").

In the instant case, the Defendant's argument is based not on the actual language, statute charged, or facts alleged in the Indictment.  Instead, she seeks to collaterally attack the underlying proceedings which provided the basis for the charges in the Indictment.  The Court will first address the Defendant's arguments related to her underlying deportation order and proceedings and will then move on to the Defendant's arguments related to her prior drug trafficking conviction, which led to her earlier deportation.

## (A) Collateral Attack of Underlying Deportation Order

The Defendant claims that her 1998 deportation cannot, as a matter of law, serve as the prior lawful deportation order required to establish the prior deportation element of a violation of 8 U.S.C. § 1326.  Under 8 U.S.C. 1326(d), for a defendant accused of illegal reentry to collaterally attack a prior deportation order, she must show: "(1) the defendant has exhausted [her] administrative remedies; (2) the deportation proceedings improperly deprived the defendant of

5

judicial review; and (3) the deportation order was fundamentally unfair." United States v. Zuniga-Guerrero, 460 F.3d 733, 735 (6th Cir. 2006) (citing 8 U.S.C. 1326(d)); see also United States v. Mendoza-Lopez, 481 U.S. 828, 838-39 (1987); United States v. Martinez-Rocha, 337 F.3d 566, 568 (6th Cir. 2003). These requirements are listed in the conjunctive and, thus, must all three be met before the Defendant may bring a collateral attack. United States v. Ponce-Covarrubias, 227 F. Supp. 2d 931, 932 (W.D. Tenn. 2002). In the present case, the Court finds that the Defendant has failed to meet the second and third of the section 1326(d) prerequisites and, thus, finds that the Defendant's attempt to collaterally attack her underlying deportation order must fail.

*(1) Exhaustion*

In order to exhaust the available administrative remedies, an alien must have taken a timely appeal from the removal or deportation order to the BIA. Sswajje v. Ashcroft, 350 F.3d 528, 532 (6th Cir. 2003); see, e.g., Martinez-Rocha, 337 F.3d at 569 (observing that the defendant did not exhaust his administrative remedies when he waived his appeal of his deportation order to the BIA). In this case, the Defendant claims that she exhausted her administrative remedies. The Government asserts that no dispute exists as to the fact that the Defendant exhausted her remedies when she appealed her deportation order to the BIA. Accordingly, the Court finds that the Defendant has exhausted her available administrative remedies and that she has satisfied the first requirement for collaterally attacking an underlying deportation order in the context of an illegal reentry case. See 8 U.S.C. 1326(d).

*(2) Deprivation of Judicial Review*

The Defendant argues that she was improperly deprived of judicial review of her deportation proceedings when her attorney at the deportation proceedings was ineffective and failed

to seek judicial review of the BIA's dismissal of her appeal and failed to advised the Defendant of the procedure for seeking judicial review of the BIA's decision. In her motion, the Defendant does not advise the Court of which mechanism of judicial review she was deprived. At the motion hearing, defense counsel represented that he thought the BIA decision could have been appealed to a district court.

The Government responds that the Defendant's immigration attorney did not perform ineffectively when he did not seek judicial review of the BIA's decision or advise the Defendant to do so. In its response, the Government operates under the assumption that the Defendant is referring to a habeas corpus petition under 28 U.S.C. § 2241, which was the mechanism by which an alien could have sought judicial review of a deportation order by an Article III court at the time relevant to the Defendant's case. See INS v. St. Cyr, 533 U.S. 289, 308, 312-13 (2001) (explaining that the petitioner could have brought his challenge to the BIA's discretionary denial of § 212(c) relief in a habeas corpus petition under § 2241). The Government contends that there is no right to effective assistance of counsel in general habeas corpus proceedings and that aliens receive even less protection as to immigration proceedings.

The Government argues that even if the Defendant did have a right to effective assistance of counsel for the preparation and filing of a § 2241 habeas petition, it would be a due process right, requiring that the Defendant show that but for her immigration attorney's failure to advise her related to or file a § 2241 petition, she would not have been deported. The Government contends that the Defendant is unable to meet that standard in this case because any claim that she would have raised in a petition filed under § 2241 would have been related to the BIA's denial of her relief under § 212(c), which was fully discretionary. As purely discretionary relief, the denial

of such relief to an alien does not "amount to a deprivation of a liberty interest." Feldmen v. Gonzales, 2005 WL 3113488, at *3 (6th Cir. Nov. 21, 2005).

At the time when the Defendant's unfavorable BIA decision was rendered, there was no mechanism through which the Defendant could have directly appealed the decision, as the Defendant suggests. The only mechanism available to the Defendant after the BIA affirmed the deportation order of the IJ appears to have been a § 2241 habeas petition.[2] As the Government points out, and more fully examined below, there is no Sixth Amendment right to counsel either in the filing and litigation of criminal habeas corpus petitions, Washington v. Delo, 51 F.3d 756, 760 (8th Cir. 1995), or in civil deportation proceedings, Denko v. INS, 351 F.3d 717, 723 (6th Cir. 2003). Accordingly, the Defendant's immigration attorney's failure to advise her of the possibility of filing a § 2241, which was not an automatic appeal mechanism, could not have violated any Sixth Amendment right she may have had related to representation of counsel and did not deny her an opportunity to obtain some type of judicial review of her deportation order to which she had a right.

Moreover, the Court notes that the standard which the Defendant must meet in this case for her proposed collateral attack to go forward is to show that "the deportation proceedings improperly deprived the defendant of judicial review." See 8 U.S.C. 1326(d). The Court does not find that a § 2241 habeas petition would have been a part of the deportation proceedings and thus a failure of her attorney to file such a petition does not equate to the deportation proceedings

_____

[2]As recognized by the Sixth Circuit in Muka v. Baker, 559 F.3d 480, 483-84 (6th Cir. 2009), the REAL ID Act of 2005 eliminated habeas review and provides "an exclusive mechanism for review of [the legality of removal orders] via petitions for review filed in the court of appeals[.]"

8

themselves denying the Defendant of judicial review.[3]

Accordingly, because the Defendant did not have a right to counsel at the § 2241 habeas petition stage and because such a petition was not an automatic appeal and not part of the deportation proceedings in her case, the Court finds that the Defendant has not shown that she was improperly deprived of judicial review in her deportation proceedings.

*(3) Fundamental Unfairness*

"To constitute fundamental unfairness . . . a defect in the removal proceedings 'must have been such as might have led to a denial of justice.'" Huicochea-Gomez v. INS, 237 F.3d 696, 699 (6th Cir. 2001) (quoting Dokic v. INS, No. 92-3592, 1993 WL 265166, *3 (6th Cir. July 15, 1993)). The Court of Appeals for the Sixth Circuit has not determined the degree of prejudice required to establish fundamental unfairness under section 1326(d). The majority of circuits have required that the Defendant show actual prejudice to some extent in order to establish fundamental unfairness in the proceedings. United States v. El Shami, 434 F.3d 659, 665 (4th Cir. 2005) (holding that to show fundamental unfairness, an alien must show that "but for the errors complained of, there was a reasonable probability that he would not have been deported"); United States v. Aguirre-Tello, 353 F.3d 1199, 1207-10 (10th Cir. 2004) (requiring that the alien show that there is a "reasonable likelihood" that he would not have been deported had the proceedings been different); United States v. Mendoza-Mata, 322 F.3d 829, 832 (5th Cir. 2003) (holding that "[a] showing of prejudice means that 'there was a reasonable likelihood that but for the errors complained of the defendant would not

---

[3]"In the immigration context, "judicial review" and "habeas corpus" have historically distinct meanings . . . the Court [in Heikkila] concluded that 'it is the scope of inquiry on habeas corpus that differentiates' habeas review from 'judicial review.'" St. Cyr, 533 U.S. at 311-312 (discussing the differences between the terms "judicial review" and "habeas corpus" in terms of 8 U.S.C. § 1252) (quoting and citing Heikkila v. Barber, 345 U.S. 229, 235-36 (1953)).

have been deported'"); United States v. Fernandez-Antonia, 278 F.3d 150, 158 (2d Cir. 2002) (holding that the "alien needs to prove that he might not have been deported had he been able to exercise his right of direct appeal; he must make some showing that the result might have been different"); United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997) (observing that "for a collateral attack on a now-final deportation order, the defendant must show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred"); United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995) (holding that "[a]ctual prejudice exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.'"); United States v. Espinoza-Farlo, 34 F.3d 469, 471 (7th Cir. 1994) (holding the alien "must show that he was prejudiced by the Immigration Judge's failure to inform him of his rights to seek a suspension of deportation or to appeal, because an informed exercise of those rights would have yielded him relief from deportation"); United States v. Holland, 876 F.2d 1533, 1536 (11th Cir. 1989) (observing that "prejudice need not rise to the level of showing that the defendant would not have been deported, but rather that the errors might have affected the outcome of the hearing").

In this case, the Defendant argues that her deportation order was fundamentally unfair and that the Court should allow her to mount a collateral attack on the order because: 1) her attorney at the prior deportation proceedings was ineffective in failing to properly advise and represent her related to her underlying criminal case and its effect on the immigration proceedings, and 2) the BIA improperly retroactively applied AEDPA to her case in affirming the IJ's denial of discretionary relief potentially available to her at the time under § 212(c).

10

*(i) Ineffective Assistance of Counsel*

The Defendant argues that the deportation order was fundamentally unfair because her attorney for the immigration proceedings failed to advise her that she should contest her underlying felony drug conviction based on ineffective assistance of counsel. The Defendant claims that the attorney who represented her on her underlying drug trafficking charges was ineffective in that he had an actual conflict of interest throughout that representation, that he failed to request an interpreter for her to better understand the proceedings, and that he failed to advise her about the defenses of duress and coercion, which may have been available to her if she proceeded to trial. Additionally, as discussed in the previous section, the Defendant claims that her counsel at the deportation proceedings was ineffective in failing to seek judicial review of the BIA's dismissal of her appeal.

The Government responds that the Defendant did not have a Sixth Amendment right to counsel because immigration proceedings are civil in nature. Moreover, as to the Defendant's first argument that counsel was ineffective for failing to lodge challenges to her underlying drug conviction at her deportation proceedings, the Government cites Al-Najar v. Mukasey, 515 F.3d 708, 714-15 (6th Cir. 2008), and argues that "the law does not permit an alien who faces deportation based on a prior conviction to challenge the prior conviction during immigration proceedings" [Doc. 46 at 6]. As to the Defendant's argument that her immigration attorney was ineffective in failing to file on her behalf, or advise her to file, an appeal or petition (seemingly under § 2241), the Government again responds that defendants do not have a right to effective assistance of counsel at the habeas stage and that the Defendant cannot meet the requirements for establishing ineffective assistance of counsel for deportation proceedings.

Aliens are entitled to "a full and fair hearing" during deportation proceedings because Fifth Amendment due process guarantees extend to them. Huicochea-Gomez, 237 F.3d at 699 (citations omitted). "Because '[a] deportation proceeding is a purely civil action,' INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984), an ineffective assistance of counsel claim is reviewed under the Due Process Clause of the Fifth Amendment rather than under the Sixth Amendment." Denko, 351 F.3d at 723 (alteration and citation in original). For a claim of ineffective assistance of counsel to rise to the level of a Fifth Amendment due process violation, the alien must show that "the proceeding [was] so fundamentally unfair that the alien was prevented from reasonably presenting his case." Id. (quotation and additional citation omitted). "The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." Huicochea-Gomez, 237 F.3d at 699 (citation omitted).

In Huicochea-Gomez, the Sixth Circuit found that "[t]o prevail, the Huicocheas must [have] establish[ed] that but for [the attorney's] legal advice, they would have been entitled to continue residing in the United States." Id. at 699-700. Because the Sixth Circuit found that the Huicocheas were ineligible to remain in the country regardless of their attorney's advice, the court found them unable to show that their Fifth Amendment due process rights were violated through their attorney's alleged ineffective assistance. Id. The Sixth Circuit further found that the relief the Huicocheas claimed to have been deprived of was fully discretionary, meaning that the failure to grant the relief did "not amount to a deprivation of a liberty interest." Id. at 700 (citation omitted). The court also found that it was too speculative to decide that the Huicocheas would have obtained the discretionary relief they sought if their attorney had been effective, because the remedy sought

Case 3:11-cr-00070-TWP-CCS   Document 62   Filed 03/19/12   Page 12 of 24   PageID #: 378

was both discretionary and "extraordinary." Id.

In this case, with regard to the Defendant's argument that her immigration attorney was ineffective in not making any challenge to her prior drug conviction during the deportation proceedings, the Court finds that the Defendant's attorney would likely not have been permitted to challenge her prior conviction at the immigration proceedings and thus cannot be deemed ineffective for not having done so. As stated above, an alien cannot collaterally attack an underlying criminal conviction which forms the basis for removal proceedings in those proceedings. Al-Najar, 515 F.3d at 714-15; see also Palmer v. INS, 4 F.3d 482, 489 (7th Cir. 1993); Nwachukwu v. Holder, 426 F. A'ppx 373, 377 (6th Cir. June 6, 2011) (finding that the petitioner "may not collaterally attack his underlying conviction in [the] removal proceedings" and that "[i]t was proper to refrain from 'go[ing] behind the judicial record' to determine [his] guilt or innocence or examin[e] the validity of his plea") (citing Al-Najar, 515 F.3d at 714-15 (quoting Palmer, 4 F.3d at 489)). Because the Court finds that it would have been proper for the IJ and the BIA not to allow the Defendant to collaterally attack her drug trafficking conviction, the Court cannot and does not reach the conclusion that "but for" the Defendant's immigration attorney's failure to attempt to challenge her felony conviction she would have been allowed to remain in the United States. See Huicochea-Gomez, 237 F.3d at 699-700.

As to the Defendant's claim that her deportation order was fundamentally unfair because her attorney did not file a § 2241 habeas petition on her behalf or advise her to do so on her own, as the Government argues, the Sixth Amendment right to counsel does not apply to habeas corpus proceedings. Barker v. Ohio, 330 F.2d 694 (6th Cir. 1964). Moreover, whether a petitioner might prevail on claims in a habeas petition, particularly one that would have been based on the

denial of purely discretionary relief, as here under the former § 212(c), is far too speculative to lead the Court to a finding that the Defendant's deportation was fundamentally unfair. As in <u>Huicochea-Gomez</u>, where the petitioners argued unavailingly that their attorney's ineffectiveness deprived them of the discretionary relief from removal which they sought, the Defendant would need to show that her immigration attorney's failure to file or advise her to file a § 2241 deprived her of a "liberty interest." <u>See</u> 237 F.3d at 699-700. However, just as in <u>Huicochea-Gomez</u>, the failure to obtain fully discretionary relief cannot constitute the deprivation of a liberty interest, given its speculative and extraordinary nature. <u>Id.</u> As more fully explained below, the Defendant was statutorily ineligible for § 212(c) discretionary relief because she had not been a lawful permanent resident in the United States for a full seven years at the time of her deportation proceedings. Accordingly, the Court finds that the Defendant's claim that her attorney was ineffective in failing to seek an additional appeal or further review of the BIA's decision does not rise to the level of a Fifth Amendment due process violation, as required for an alien's claim of ineffective assistance of counsel at a civil deportation proceeding.

Because the Court does not find that either of the Defendant's arguments with regard to ineffective assistance of counsel rise to the level of a violation of her due process rights under the Fifth Amendment, the Court does not find that this argument meets the third requirement of § 1326(d), that the Defendant show that her deportation order was fundamentally unfair.

*(ii) Denial of § 212(c) Relief*

The Defendant also contends that the deportation proceedings and order were fundamentally unfair because the BIA's decision, retroactively applying AEDPA to her case, was contrary to law and violated the Defendant's Fifth Amendment due process rights. The Government

14

responds that the deportation order was not rendered fundamentally unfair by the BIA's utilization of a retroactive application of AEDPA to find the Defendant ineligible for § 212(c) relief, because the relief was wholly discretionary in nature, and because the Defendant was ineligible for § 212(c) relief under the residency time requirements of the statute at the time.

The Court will now conduct a brief overview of the evolution of prior immigration law that gave the Attorney General discretion to waive deportation of aliens in certain circumstances.[4] "Section 212 of the Immigration and Nationality Act of 1952, . . ., excluded from the United States several classes of aliens, including those convicted of offenses involving moral turpitude or the illicit traffic in narcotics." St. Cyr, 533 U.S. at 294. The Act gave "the Attorney General broad discretion to admit excludable aliens[,]" who had temporarily left the country voluntarily but were returning to their lawful residence of seven years. Id. Although this section 212(c) "waiver" literally only applied to exclusion proceedings, the BIA interpreted it "to authorize any permanent resident alien with 'a lawful unrelinquished domicile of seven consecutive years' to apply for a discretionary waiver from deportation." Id. at 295 (quoting 8 U.S.C. §1183(c)). Beginning in 1990, Congress enacted a series of amendments to section 212(c) that progressively narrowed eligibility for discretionary relief from deportation:

> In 1990, Congress amended § 212(c) to preclude from discretionary relief anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years. In 1996, in § 440(d) of AEDPA, Congress identified a broad set of offenses for which convictions would preclude such relief. ["The new provision barred review for individuals ordered deported because of a conviction for an aggravated felony, for a drug conviction, for certain weapons or national security violations, and for multiple convictions involving

---

[4]For this review, the Court relies primarily on the Supreme Court's overview of this provision of immigration law in St. Cyr, 533 U.S. at 293-97.

> crimes of moral turpitude."]  And finally, that same year, Congress
> passed IIRIRA[, which] repealed § 212(c), . . .  and replaced it with
> a new section that gives the Attorney General the authority to cancel
> removal for a narrow class of inadmissible or deportable aliens . . . .
> So narrowed, that class does not include anyone previously
> "convicted of any aggravated felony."

Id. at 297 (statutory citations omitted; text of footnote inserted).

After AEDPA was enacted, the BIA held in In re Soriano that AEDPA applied retroactively to prohibit aliens from obtaining § 212(c) relief in all cases where the relief had not been given prior to the date AEDPA became effective.  21 I. & N. at 519-20.  In St. Cyr, however, the Supreme Court held that the AEDPA and IIRIRA provisions related to § 212(c) did not apply retroactively to those who entered guilty pleas to the criminal charges underlying their deportation orders prior to the enactment of AEDPA and IIRIRA.  533 U.S. at 315; see also Zuniga-Guerrero, 460 F.3d at 736.

In this case, the Defendant argues that the BIA improperly relied on the holding in In re Soriano, in determining that she was ineligible for a § 212(c) waiver, rather than making its finding based on the fact that the Defendant had not yet been a lawful permanent resident for seven years, as the IJ did.  The Defendant claims that this improper retroactive application of AEDPA in the BIA's decision renders her deportation order fundamentally unfair.  The Government responds that it agrees that under the Supreme Court's decision in St. Cyr, the BIA should not have applied AEDPA to the Defendant's case because she entered her guilty plea prior to AEDPA's effective date. The Government contends, however, that this improper basis for finding the Defendant ineligible for § 212(c) relief did not render the deportation order fundamentally unfair because fundamental unfairness focuses on the violation of due process rights, and the Defendant's due process rights were not violated by the BIA's error in this case.

16

The Government provides two reasons to support its argument that the Defendant's due process rights were not violated by the BIA's error: 1) that the Defendant "was not statutorily eligible for § 212(c) relief because she had not been a lawful permanent resident for the required seven year period" and thus she would have been ineligible even if the BIA applied the proper analysis; and 2) because § 212(c) relief was solely within the Attorney General's discretion and failure to grant discretionary relief does not deprive an individual of a liberty interest [Doc. 46 at 10-11]. In finding that the BIA's error did not render the Defendant's deportation order fundamentally unfair, the Court agrees with the Government on both accounts.

In Ashki v. INS, the Court of Appeals for the Sixth Circuit determined that a deportable alien "has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation." 233 F.3d 913, 921 (6th Cir. 2000). "'Suspension of deportation is rather an "act of grace" that rests in the "unfettered discretion" of the Attorney General. Because suspension of deportation is discretionary, it does not create a protectible liberty or property interest.'" Id. (quoting Appiah v. INS, 202 F.3d 704, 709 (4th Cir. 2000)). At the hearing, the Defendant additionally presented what defense counsel described as a "novel" argument that her due process rights were violated by the fact that she was only a few weeks shy of having been a lawful resident for the statutorily required seven years at the time when the IJ denied her the requested § 212(c) relief, and that this denial was unfair because she was so close. Although the Court notes that the Defendant does in fact appear to have been a mere few weeks short of being statutorily eligible [Exhibit 5 to Doc. 46], the Court does not find that the IJ construing the statute against the Defendant on the day of immigration hearing, July 18, 1996, was fundamentally unfair. Moreover, the Defendant had no constitutionally-protected interest in obtaining the relief sought. See Ashki, 233 F.3d at 921.

17

The Defendant was not deprived of due process during her deportation proceedings by the BIA's erroneous application to AEDPA to her case, finding her ineligible for discretionary relief under § 212(c). The Court finds that the Defendant had been a lawful permanent resident for less than the statutorily-required seven years at the time of the unfavorable decision and, thus, would have been ineligible for a § 212(c) waiver even if the BIA had not applied AEDPA to her case. The Court also finds that the fact that the Defendant did not obtain the waiver could not have violated her due process rights because she had no constitutionally-protected interest in obtaining the discretionary waiver sought. Accordingly, the Court finds that the BIA's improper application of AEDPA in denying the Defendant's appeal from the IJ's deportation order did not render that order fundamentally unfair.

### (B) Collateral Attack of Underlying Conviction

Next, the Defendant argues that she is authorized under 8 U.S.C. § 1326 to collaterally attack her prior felony drug conviction because she received ineffective assistance of counsel in those proceedings and because that improperly obtained conviction formed the basis of the deportation order underlying her current illegal reentry charge. Specifically, the Defendant argues that her guilty plea in the felony drug case was not knowingly and voluntarily made because she was not advised of the immigration consequences by the court or her counsel at the time the plea was entered. Additionally, the Defendant claims that she received ineffective assistance of counsel and her plea was involuntarily made when she was not provided with an interpreter during the plea hearing, and her attorney did not request one. Accordingly, the Defendant claims that she did not fully understand the proceedings against her and that she had difficulty communicating with her

attorneys.

The Defendant also contends that her attorney's co-counsel in her underlying drug case had a conflict of interest because he had previously or was at that time representing Adrian Todd Kincaid, who the Defendant claims was abusive and threatened her into participating in the drug transaction, which formed the basis for her drug trafficking charges. The Defendant further argues that her trial counsel failed to advise her about the defense of duress and that she would not have entered a guilty plea if she had been so advised. At the hearing on the instant motion, the Defendant emphasized that she is not raising these issues in order to have her prior conviction set aside in this case, but instead argues that the constitutional violations inherent in her prior drug conviction, upon which her previous deportation order was based, should render the prior deportation order unavailable to the Government to use as proof of an essential element of the instant illegal reentry charge.

Citing cases from other circuits, the Government responds that the Defendant cannot collaterally attack her prior drug trafficking conviction in the context of this proceeding. The Government argues that allowing the Defendant to collaterally attack her prior conviction through her illegal reentry proceedings would allow every defendant deported after a criminal conviction and charged under § 1326 to litigate both the § 1326 and the prior criminal case, which could have been concluded many years before and in other jurisdictions. The Government argues that as in cases involving attempted collateral attacks of prior convictions in the context of the Armed Career Criminal Act, the Court's interest in the finality of justice would be adversely affected, and if allowed, the attacks would delay the administration of justice. See Custis v. United States, 511 U.S. 485, 497 (1994).

In support of her argument that she can collaterally attack her underlying drug conviction in the context of this proceeding, the Defendant cites United States v. Rodriguez-Perez, 428 F. App'x 324, 328 (5th Cir. 2011), relying on the following quotation:

> Therefore, even if a court could conclude that the instant conviction is unlawful because it is based on an order of removal which in turn is unlawful because it was based on a conviction resulting from ineffective assistance of counsel, § 1326(d) does not allow such an argument or conclusion unless [the defendant] can make out the three elements required by the Supreme Court and codified in statute.

The Defendant urges the Court to take from this excerpt that the Court is able to make such a conclusion, that convicting the Defendant of a violation of § 1326 in the instant case would be unlawful because the underlying deportation order is unlawful because it was based on a conviction resulting from ineffective assistance of counsel. However, the Government points out, and the Court agrees, that "even if" is the central aspect of that passage in the context of this case. Even assuming that the Court found the Fifth Circuit's unpublished opinion in Rodriguez-Perez persuasive, that case does not dictate that the Defendant reach her desired result here, because the Fifth Circuit found that the defendant needed to show the three prerequisites of § 1326(d) discussed above before the Court could get to the analysis of whether a conviction under § 1326 would be unlawful under the circumstances where the underlying conviction which led to a deportation order was obtained through ineffective assistance of counsel. In this case, the Court has already found that the Defendant has failed to establish that she was improperly deprived of judicial review and that the entry of her underlying deportation order was fundamentally unfair.

Because the Sixth Circuit has not expressly ruled on the instant issue of whether a defendant can attack an underlying criminal conviction in this context on the basis of ineffective assistance of counsel, the Government urges the Court to follow the rulings of the Seventh, Ninth,

20

and Tenth Circuits. The Court finds each of the cases cited by the Government to be persuasive, with United States v. Robledo-Gonzales, 80 F. App'x 502, 504-06 (7th Cir. 2003), highly persuasive in this case. In Robledo-Gonzales, the defendant was charged with violating § 1326 after having been previously deported after being convicted on state drug charges. Id. at 504. The defendant moved to dismiss his indictment on the grounds that his prior attorney was ineffective in failing to properly explain the immigration consequences of a guilty plea and because his guilty plea was involuntary. Id. The Seventh Circuit held that the prior conviction was outside of the scope of a permissible collateral attack in the § 1326 context. Id.

An alien cannot attack the state convictions advanced in support of a deportation order in the deportation proceedings themselves, much less in a separate illegal reentry case:

> [T]he validity of [the defendant's] state convictions is beyond the permissible scope of collateral attack in the context of § 1326. Section 1326(d) provides for collateral attack only on the deportation order itself and then solely on the basis that the deportation proceedings were unfair. See 8 U.S.C. § 1326(d). Robledo could not have re-litigated his state convictions in the immigration proceedings, see Palmer v. INS, 4 F.3d 482, 489 (7th Cir. 1993) (collecting cases); his only avenues of relief were to challenge them on direct appeal in state court or through state and federal petitions for a writ of habeas corpus.

Robledo-Gonzales, 80 F. App'x at 504. Section 1326(d) is limited by its express language to a collateral attack upon a deportation order in an illegal reentry case. The statute itself does not permit a collateral attack on a prior criminal conviction. The Court also finds United States v. Gutierrez-Cervantez, 132 F.3d 460, 462 (9th Cir. 1997) (finding that allowing defendants to collaterally attack prior convictions in the § 1326 context would be contrary to the court's interest in the finality of judgments and would require courts to obtain transcripts and records from other jurisdictions and time periods), and United States v. Delacruz-Soto, 414 F.3d 1158, 1164-68 (10th Cir. 2005)

21

(applying the Custis preclusion on collateral attacks of prior convictions in the Armed Career Criminal Act context to § 1326 cases in finding that a defendant could not collaterally attack the validity of his aggravated felony conviction during sentencing), to be persuasive.

Significantly, in another § 1326(a) case, United States v. Moreno-Delgado, 127 F. App'x 854, 858 (6th Cir. 2005), the Sixth Circuit, citing Custis, 511 U.S. at 496-97, found that the defendant's argument that the district court erred in applying a sentencing enhancement for his prior conviction "amount[ed] to a collateral attack on a prior judgment, and [wa]s consequently impermissible." The court then went on to explain that as the defendant's attempted attack on the Texas federal court's judgment "was not based on that court's failure to appoint counsel, the Tennessee district court's refusal to permit this collateral attack was proper." Id. at 858.

In attempting to distinguish her case from those cited by the Government, the Defendant points out that many of the cited cases involve the sentencing context and that most involve prior state, rather than federal, convictions. The Court does not find that either of those distinctions negates the persuasive nature of the cases above, however, given their analogous circumstances, and the reasoning behind the decisions remains applicable to the current case. Moreover, while the Government admitted that Moreno-Delgado involved attempted collateral attacks in the sentencing context of a § 1326 case, the Government asserted that the application of the Armed Career Criminal Act reasoning from Custis by the Sixth Circuit in that case applies equally to this case at hand.

In United States v. Mendoza-Mendoza, the Sixth Circuit held in the context of an attempt to attack a prior aggravated felony in a § 1326 case, that under Custis, "a defendant may not collaterally attack a prior conviction in federal court unless: (1) there has been a previous ruling that

a conviction has been ruled constitutionally invalid; or (2) the conviction has been obtained where counsel has not been available or provided." 239 F. App'x 216, 218 (6t Cir. Aug. 15, 2007) (citing United States v. Bonds, 48 F.3d 184, 186 (6th Cir. 1995)). Moreover, as the Government points out, in the context of collateral attacks on prior criminal convictions at the sentencing stage, the Sixth Circuit has held that the Custis exception allowing a collateral attack on a prior conviction when there was a complete denial of counsel does not extend to claims of ineffective assistance of counsel. United States v. Corbin, 121 F.3d 710, 1997 WL 453154, *1 (6th Cir. Aug. 8, 1997).

The Court finds that the Defendant was unable to point the Court toward any authority from the Sixth Circuit to provide a basis for granting the Defendant's request and allowing her to collaterally attack the criminal conviction underlying her prior deportation order on the basis of ineffective assistance in her § 1326 case. The Defendant has made no allegation that she was completely denied counsel in this case, and her claim of ineffective assistance of counsel does not amount to such a complete denial of counsel. All authority which the Court has reviewed indicates that the Defendant requests to be allowed to make an attack which is not permissible in this context. As stated above, the Court finds the authority of Robledo-Gonzales, 80 F. App'x at 504, from the Seventh Circuit highly persuasive in this case, and it appears from the Sixth Circuit's ruling in Moreno-Delgado, 127 F. App'x at 858, that the Sixth Circuit would like follow the Seventh Circuit's findings. Accordingly, the Court finds that the Defendant is unable to collaterally attack her prior criminal conviction in the context of her § 1326 prosecution and that this ruling is consistent with the Court's interests in finality of judgments and efficiency of justice.

## IV.  CONCLUSION

After carefully considering the parties' filings and arguments and the relevant legal authorities, the Court finds no basis to dismiss the Indictment [Doc. 3] in this case.  For the reasons set forth herein, it is **RECOMMENDED** that the Defendant Motion to Dismiss the Indictment and Memorandum in Support [**Doc. 42**] be **DENIED**.[5]

Respectfully submitted,


__ s/ C. Clifford Shirley, Jr.___
United States Magistrate Judge

_____

[5]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended).  Failure to file objections within the time specified waives the right to review by the District Court.  Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order).  The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).